UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 23-53017-WLH |
| | : | |
| GLORIA BELLO BASSEY, | : | CHAPTER 7 |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION FOR ORDER AUTHORIZING SETTLEMENT UNDER RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

COMES NOW Michael J. Bargar, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Gloria Bello Bassey ("**Debtor**"), through undersigned counsel, and files his *Motion for Order Authorizing Settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "**Settlement Motion**"). In support of the Settlement Motion, Trustee respectfully shows:

**Jurisdiction and Venue**

1.      This Bankruptcy Court has jurisdiction over this Settlement Motion under 28 U.S.C. §§ 157 and 1334. Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought in this Settlement Motion is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). This Settlement Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

2.      On March 31, 2023 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division

("**Bankruptcy Court**"), initiating Chapter 13 Case No. 23-53017-WLH (the "**Bankruptcy Case**" or "**Case**").

3. On April 14, 2023, approximately two weeks after initiating the Bankruptcy Case, Debtor filed a request to convert the Case to a case under Chapter 7 of the Bankruptcy Code, and, on April 17, 2023, the Case was converted.

4. Trustee was thereafter appointed to serve as Chapter 7 trustee in the Case.

5. Before the Petition Date, Al Tadamon National Company for General Trading & Contracting Co. ("**Al Tadamon**") filed a complaint against Debtor and Globel International, LLC ("**Globel**") in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 21-022129 (03) (the "**Litigation**"), alleging, among other things, fraudulent conduct and conversion on the part of Debtor and Globel that resulted in damage to Al Tadamon in excess of $212,000.

6. On June 30, 2022, the court in the Litigation entered a default judgment (the "**Default Judgment**") against Debtor and Globel.

7. On her original Schedule A/B, Debtor scheduled an ownership interest in that certain real property with a common address of 1820 Parkades Path, SW, Marietta, Georgia 30008 (the "**Property**").  [Doc. No. 13 at page 10 of 45].

8. In a detailed search of the real estate records of Cobb County, State of Georgia (the "**Real Estate Records**"), Trustee has determined that Debtor solely owns the Property.

9. On January 3, 2023, Debtor executed a security deed (the "**Security Deed**") in favor of Al Tadamon to transfer an interest in the Property to Al Tadamon. The Security Deed was recorded in the Real Estate Records at Deed Book 16111, Page 1670 on January 20, 2023.

10. Trustee asserts that the transfer (the "**Transfer**") accomplished by the Security

Deed is avoidable under 11 U.S.C. § 547 and that Trustee can recover the interest transferred to Al Tadamon through the avoided transfer, or its value, under 11 U.S.C. § 550 and that Trustee can preserve the avoided transfer for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551 (collectively, the "**Avoidance Issues**").

11. Al Tadamon contests Trustee's claims related to the avoidability and recoverability of the Transfer.

12. Trustee intends to sell the Property under 11 U.S.C. § 363.

13. On September 12, 2023, Al Tadamon filed a proof of claim [Doc. No. 7-1] (the "**Claim**") in the Bankruptcy Case in the amount of $215,736.60, with $110,900.00 claimed as secured in the Property.

**The Proposed Settlement**

14. Following negotiations, Trustee and Al Tadamon (collectively, the "**Parties**") reached an agreement (the "**Settlement Agreement**") to resolve the Avoidance Issues raised by Trustee, subject to Bankruptcy Court approval. A copy of the Settlement Agreement is attached as Exhibit "A" to this Settlement Motion and is incorporated herein by reference. Significant terms of the Settlement Agreement follow:[1]

> a. Effective upon the Settlement Approval Order[2] becoming final (a) the Transfer is avoided under Section 547 of the Bankruptcy Code; (b) the Trustee recovers the interest in the Property transferred by the Transfer under Section 550 of the Bankruptcy Code; and (c) the avoided Transfer is preserved under Section 551 of the Bankruptcy Code.

---

[1] The following is a summary of the Settlement Agreement and is not intended to be comprehensive. To the extent that anything in this summary is contrary to the terms of the Settlement Agreement, the Settlement Agreement shall control.

[2] Capitalized terms not defined in this Settlement Motion shall have the meanings ascribed to them in the Settlement Agreement.

3

    b. If and only if: (a) the Settlement Approval Order becomes final; (b) the Bankruptcy Court enters an Order (the "**Sale Order**") authorizing a sale of the Property; (c) the Sale Order becomes final; and (d) Trustee closes a sale (the "**Sale**") of the Property in accordance with the terms of the Sale Order, the Parties agree that the proceeds of the Sale of the Property shall be paid as follows: first, payment of all costs of Sale, including, without limitation, any real estate broker commission authorized by the Court; second, payment of all liens against or security interests in the Property that have a greater priority in the Property than the Security Deed has in the Property, under principles of Georgia law; third, the sum of $12,500.00 to Al Tadamon; and, fourth the remainder to the Bankruptcy Estate for distribution in accordance with Section 726 of the Bankruptcy Code.

    c. The Parties stipulate and agree that Al Tadamon's Claim shall be reduced by the amount of $12,500.00 following Al Tadamon's receipt of the $12,500.00 from the proceeds of the Sale of the Property as contemplated by Section 2.3 of the Settlement Agreement. In addition, the Claim shall be fully unsecured, and Al Tadamon agrees to file an amended Claim to reflect the reduced amount and reclassified status as unsecured. The amended Claim will be allowed as a timely filed, non-priority, general unsecured claim against the Bankruptcy Estate.

## Relief Requested

15. By this Settlement Motion, Trustee requests that the Bankruptcy Court approve the Settlement Agreement between the Parties.

## Basis for Relief

16. Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "[o]n motion by Trustee and after notice of a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The standard in this Circuit for determining whether to approve a compromise or settlement pursuant to Rule 9019(a) is set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990), in which the Eleventh Circuit stated as follows:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:

4

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1549. In making its evaluation, a court must not rest its approval of the settlement on a resolution of the ultimate factual and legal issues underlying the compromised disputes. *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). Rather, the court should consider the probable outcome of the litigation, including its advantages and disadvantages, and make a pragmatic decision based on all equitable factors. *Florida Trailer and Equip. Co. v. Deal,* 284 F.2d 567, 571 (5th Cir. 1960).[3]

17. The proposed settlement between the Parties is the product of arms' length negotiations and reflects the Parties' analysis and consideration of the relevant legal, factual, and economic issues.

18. Given the potential expense of litigating the claims raised by Trustee and the contingent nature of the same, in the event that the claims that are proposed to be settled are instead prosecuted, the amount of time that such litigation will require, the delay before the final outcome is known (including the time necessary for any potential appeals), and the complexity and uncertain resolution of factual and legal disputes, settlement on the terms described in the Settlement Agreement is a proper exercise of the Trustee's business judgment and in the best interests of the Bankruptcy Estate.

19. Trustee estimates that the proposed Settlement Agreement will allow him to make a meaningful distribution to holders of timely filed general unsecured claims.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

20. Under the standard set forth above and for the reasons previously detailed in this Settlement Motion, Trustee requests that the Bankruptcy Court approve the Settlement Agreement.

WHEREFORE, Trustee respectfully requests that the Bankruptcy Court enter an Order (i) granting this Settlement Motion; (ii) authorizing Trustee to take actions reasonably necessary to effectuate the terms of the Settlement Agreement; and (iii) granting to the parties such other and further relief that the Court deems just and appropriate.

Respectfully submitted, this 19th day of September, 2023.

ROUNTREE LEITMAN KLEIN & GEER, LLC  
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*  
Michael J. Bargar  
Georgia Bar No. 645709  
mbargar@rlkglaw.com

Century Plaza I  
2987 Clairmont Road, Suite 350  
Atlanta, Georgia 30329  
404-410-1220

**EXHIBIT "A" FOLLOWS**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") dated as of September 19, 2023 (the "**Effective Date**"), is entered between Michael J. Bargar, as Chapter 7 trustee ("**Trustee**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Gloria Bello Bassey ("**Debtor**") and Al Tadamon National Company for General Trading & Contracting Co. ("**Al Tadamon**"), a Kuwait corporation.

### Background

1. On March 31, 2023 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"), initiating Chapter 13 Case No. 23-53017-WLH (the "**Bankruptcy Case**").

2. On April 14, 2023, approximately two weeks after initiating the Bankruptcy Case, Debtor filed a request to convert the Case to a case under Chapter 7 of the Bankruptcy Code, and, on April 17, 2023, the Case was converted.

3. Trustee was thereafter appointed to serve as Chapter 7 trustee in the Case.

4. Before the Petition Date, Al Tadamon filed a complaint against Debtor and Globel International, LLC ("**Globel**") in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 21-022129 (03) (the "**Litigation**"), alleging, among other things, fraudulent conduct and conversion on the part of Debtor and Globel that resulted in damage to Al Tadamon in excess of $212,000.

5. On June 30, 2022, the court in the Litigation entered a default judgment (the "**Default Judgment**") against Debtor and Globel.

6. On her original Schedule A/B, Debtor scheduled an ownership interest in that certain real property with a common address of 1820 Parkades Path, SW, Marietta, Georgia 30008 (the "**Property**"). [Doc. No. 13 at page 10 of 45].

7. In a detailed search of the real estate records of Cobb County, State of Georgia (the "**Real Estate Records**"), Trustee has determined that Debtor solely owns the Property.

8. On January 3, 2023, Debtor executed a security deed (the "**Security Deed**") in favor of Al Tadamon to transfer an interest in the Property to Al Tadamon. The Security Deed was recorded in the Real Estate Records at Deed Book 16111, Page 1670 on January 20, 2023.

9. Trustee asserts that the transfer (the "**Transfer**") accomplished by the Security Deed is avoidable under 11 U.S.C. § 547 and that Trustee can recover the interest transferred to Al Tadamon through the avoided transfer, or its value, under 11 U.S.C. § 550 and that Trustee can preserve the avoided transfer for the benefit of the Bankruptcy Estate

under 11 U.S.C. § 551 (collectively, the "**Avoidance Issues**").

10. Al Tadamon contests Trustee's claims related to the avoidability and recoverability of the Transfer.

11. Trustee intends to sell the Property under 11 U.S.C. § 363.

12. On September 12, 2023, Al Tadamon filed a proof of claim [Doc. No. 7-1] (the "**Claim**") in the Bankruptcy Case in the amount of $215,736.60, with $110,900.00 claimed as secured in the Property.

13. Following negotiations, Trustee and Al Tadamon (collectively, the "**Parties**") have reached an agreement to resolve the Avoidance Issues raised by Trustee, subject to Bankruptcy Court approval.

Accordingly, the Parties agree as follows:

1. **Background.** The recitations in the above background section are incorporated into this Agreement as if set forth fully herein.

2. **Resolution of the Avoidance Issues.** Subject to approval of this Agreement by the Bankruptcy Court, following notice and the opportunity for a hearing, the Parties agree to resolve the claims and disputes between them as follows:

    2.1. *Approval of Proposed Settlement.* Within five (5) business days after execution of this Agreement by each of the Parties, Trustee shall prepare and file the necessary pleadings, including, but not limited to, a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**Settlement Approval Motion**"), seeking entry of an order by the Bankruptcy Court approving the compromise and settlement contemplated herein ("**Settlement Approval Order**").

    2.2. *Avoidance of Transfer.* Effective upon the Settlement Approval Order becoming final (a) the Transfer is avoided under Section 547 of the Bankruptcy Code; (b) the Trustee recovers the interest in the Property transferred by the Transfer under Section 550 of the Bankruptcy Code; and (c) the avoided Transfer is preserved under Section 551 of the Bankruptcy Code.

    For the purposes of this Agreement, the Settlement Approval Order becomes final when it has been entered on the docket in the Bankruptcy Case and it (a) has not been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof has expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

2.3. *Distribution of Proceeds from the Sale of the Property.* If and only if: (a) the Settlement Approval Order becomes final; (b) the Bankruptcy Court enters an Order (the "**Sale Order**") authorizing a sale of the Property; (c) the Sale Order becomes final; and (d) Trustee closes a sale (the "**Sale**") of the Property in accordance with the terms of the Sale Order, the Parties agree that the proceeds of the Sale of the Property shall be paid as follows: first, payment of all costs of Sale, including, without limitation, any real estate broker commission authorized by the Court; second, payment of all liens against or security interests in the Property that have a greater priority in the Property than the Security Deed has in the Property, under principles of Georgia law; third, the sum of $12,500.00 to Al Tadamon; and, fourth the remainder to the Bankruptcy Estate for distribution in accordance with Section 726 of the Bankruptcy Code.

For the purposes of this Agreement, the Sale Order becomes final when it has been entered on the docket in the Bankruptcy Case and it (a) has not been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof has expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

2.4. *Al Tadamon's Unsecured Claim Against the Bankruptcy Estate.* The Parties stipulate and agree that Al Tadamon's Claim shall be reduced by the amount of $12,500.00 following Al Tadamon's receipt of the $12,500.00 from the proceeds of the Sale of the Property as contemplated by Section 2.3 of this Agreement. In addition, the Claim shall be fully unsecured, and Al Tadamon agrees to file an amended Claim to reflect the reduced amount and reclassified status as unsecured. The amended Claim will be allowed as a timely filed, non-priority, general unsecured claim against the Bankruptcy Estate.

3. **No Admissions.** The Parties acknowledge and agree that this Agreement is being executed and delivered as part of the compromise and settlement of disputed claims and is expressly contingent upon and subject to the approval of the Bankruptcy Court. The Parties further acknowledge and agree that this Agreement will not and may not be used or construed as an admission of any liability or responsibility to any party or to any other persons.

4. **Entire Agreement; Modification.** The Parties agree that there are no other agreements, oral or written, between or among them relating to any matters covered by this Agreement and that this Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein. The Parties further agree that this Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by Trustee and Al Tadamon and that any material amendment is subject to Bankruptcy Court approval.

Page 3 of 6

5. **Voluntary Execution of Agreement.** The Parties hereby mutually acknowledge and represent and warrant that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know, and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further mutually acknowledge and represent and warrant that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against either Trustee or Al Tadamon but rather shall be given fair and reasonable interpretation based on the plain language of this Agreement and the expressed intent of the Parties.

6. **Authority of Parties.** The persons executing this Agreement represent and warrant that they have the legal and institutional authority to do so on behalf of the person or legal entity for which they are signing.

7. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties. Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

8. **No Assignment or Transfer of Released Claims.** Each Party represents and warrants that as of the date of the execution of this Agreement, it is the true and lawful owner of all right, title and interest in and to each and every Claim that will be released pursuant to this Agreement, and that it has not assigned or transferred or purported to assign or transfer, to any person, firm, corporation, association or any entity whatsoever, all or any part of the Claims.

9. **Definition of Claims.** The term "Claims" means all claims or causes of action that were asserted or could have been brought as of the Effective Date by or on behalf of any Party to this Agreement, either directly or indirectly, in respect of, in relation to, or in connection with the Bankruptcy Case.

10. **Bankruptcy Court Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over the Parties for enforcement of this Agreement and any and all disputes, controversies, or claims regarding the interpretation, validity, construction or other issue relating to or concerning this Agreement. An action relating to, based upon, or arising from a breach of this Agreement shall be brought only in the Bankruptcy Court which shall retain jurisdiction over the subject matter and the Parties for this purpose.

11. **Georgia Law Applicable.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Georgia, without regard to its conflict of law principles.

12. **Severability.** If any provision of this Agreement is illegal or unenforceable, that provision is severed from this Agreement and the other provisions remain in force.

13. **Notices.** Any notices by Parties provided for or permitted under this Agreement, or by law, shall be in writing and shall be deemed received: (a) when personally delivered to a party, on the date of such delivery; or (b) when sent via electronic mail to a party at the electronic mail address set forth below, on the date of transmission, provided that the transmitting Party has no reasonable belief that the electronic mail was not delivered; or (c) when deposited in the United States Mail, certified and postage prepaid, addressed to such party at the address set forth below, three (3) days following the deposit of such notice in the mail. Notices shall be sent to the parties as follows

   13.1. *If to Trustee*:

   > Michael J. Bargar
   > Rountree Leitman Klein & Geer, LLC
   > Century Plaza I
   > 2987 Clairmont Rd., Suite 350
   > Atlanta, GA 30329
   > mbargar@rlkglaw.com (electronic mail)

   13.2. *If to Al Tadamon*:

   > G. Frank Nason, IV
   > LAMBERTH, CIFELLI, ELLIS & NASON, P.A.
   > 6000 Lake Forrest Drive, NW
   > Suite 435
   > Atlanta, Georgia 30328
   > fnason@lcenlaw.com

   The address to which notices are to be sent may be changed by any party by providing notice of the new address as provided herein.

14. **Restoration.** In the event that the Bankruptcy Court denies approval of this Agreement, then, and in that event, unless otherwise agreed by the Parties in writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

15. **Parties to Bear Own Costs.** Except as otherwise stated in this Agreement, each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Agreement and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

[
To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE**

_____
Michael J. Bargar, as and only as
Chapter 7 trustee for the bankruptcy estate of
Gloria Bello Bassey (Case No. 23-53017-WLH)

Dated: 9/19/2023


**LAMBERTH CIFELLI ELLIS NASON P.A.**
*Attorneys for Al Tadamon*

By: _____
G. Frank Nason, IV
Georgia Bar No. 535160
fnason@lcenlaw.com
6000 Lake Forrest Drive, NW
Suite 435
Atlanta, Georgia 30328

Dated: September 18, 2023

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing *Motion for Order Authorizing Settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program

Julian T. Cotton    BKECF@Padgettlawgroup.com
Julian.Cotton@Padgettlawgroup.com
robin.lindsey@padgettlawgroup.com
Tiffany.Linen@padgettlawgroup.com
angelica.reyes@padgettlawgroup.com

Janica Drayton    janica.drayton@padgettlawgroup.com

Ian M. Falcone    legalassistant@falconefirm.com

Alan Hinderleider    Alan.Hinderleider@usdoj.gov

G. Frank Nason
fnason@lcenlaw.com
NasonFR86494@notify.bestcase.com
rstuder@lcenlaw.com

Office of the United States Trustee    ustpregion21.at.ecf@usdoj.gov

This is to further certify that I have this day served the *Motion for Order Authorizing Settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure* by first class, United States mail, with postage prepaid fully thereon, to the following parties:

Gloria Bello Bassey
1820 Parkades Path
Marietta, GA 30008

This 19th day of September, 2023.

*/s/ Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709